Loran CARTER, Appellant,

v.

Douglas A. RIES, Respondent.

No. 49732.

Supreme Court of Missouri,
Division No. 1.

May 11, 1964.

· Forrest Boecker, St. Louis, for appellant.

Norris H. Allen, William B. Anderson, Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, for respondent.

HOUSER, Commissioner.

Action for $50,000 damages for personal injuries sustained by Loran Carter at the premises of Wagner Electric Corporation when an electric warehouse truck operated by plaintiff's fellow employee Thebeau ran into a ladder on which plaintiff was working, throwing him to the floor. Defendant was the company physician. Thebeau, who suffered a broken ankle, was treated by defendant, and after several weeks was authorized by defendant to return to work. In this action plaintiff claimed that he was injured as a direct result of defendant's negligence in authorizing Thebeau's return to work before Thebeau had fully recovered from the injury and while he was still unable to operate the brake pedal of the vehicle. A trial jury returned a verdict for defendant, and plaintiff appealed.

Plaintiff's petition alleged the breach of a duty owed by defendant to plaintiff as a doctor of medicine, in the following language: "It was defendant's duty, as a doctor of medicine to exercise ordinary care at all times to exercise the knowledge and skill usual in that profession in said city in the examination and treatment of patients. It was defendant's duty as medical officer of Wagner Electric Company to exercise ordinary care at all times to examine and treat as a doctor of medicine, employees of said company who were injured in their employment, and to determine from the standpoint of the examining and treating doctor, the fitness to return to employment of employes of said company injured in their employment, having in mind their own safety and that of their fellow employes." After alleging that defendant examined and treated Thebeau for injury to his ankle and that defendant authorized and directed Thebeau to return to work, plaintiff alleged that plaintiff was injured due to the fact that Thebeau was suffering from the effects of the broken ankle and had not recovered the full use and strength of the ankle; that plaintiff's injury was the direct and proximate result of defendant's carelessness and negligence "in failing to exercise ordinary care to determine Thebeau's condition with respect to his ability to perform work to which he was assigned, before directing and authorizing him to return to work as aforesaid." Plaintiff's verdict-directing instruction submitted negligence in that defendant, after examining and treating Thebeau for broken ankle bones, being under the duty to determine the physical ability of employees to perform the duties of their employment, negligently gave Thebeau a report to go back to work which work defendant knew or in the exercise of ordinary care could have known would be driving a truck, Thebeau's regular occupation, and thereby caused and permitted Thebeau to undertake employment which defendant knew or could have known Thebeau could not safely perform because of inability to operate the brake pedal due to pain and weakness in his ankle.

On this appeal plaintiff raises four procedural points, all based on claimed errors in instructions given at defendant's request. We do not reach these procedural questions because, considering the facts in the light most favorable to plaintiff, he did not make a submissible case.

Thebeau, before his injury, operated an electric warehouse "pool" truck, his duties requiring considerable "getting on and off the truck." After defendant removed the cast from Thebeau's ankle sometime in August following the injury earlier in the year defendant said to Thebeau that he thought exercise would help his foot, and expressed the opinion to Thebeau that being on a truck and working the brake pedal would help his foot. A safety and hospital "memo," signed by defendant, dated August 31, 1959, directed to the personnel director, reached the safety supervisor. It

stated the history of the injury, gave the diagnosis trimalleolar fracture and dislocation of right ankle, and released Thebeau "for light work that requires no extensive walking or standing." It was the function of the placement department to determine the meaning of the term "light work," and the decision as to what work Thebeau should be assigned to do was made by the personnel department, not by defendant. The safety supervisor asked Thebeau if he could drive a truck and Thebeau answered that he did not know. Thebeau did not tell his foreman what the defendant told Thebeau, but his foreman and the safety supervisor talked about the type of work Thebeau should do. The safety supervisor made a notation on the memo "Heitman [Thebeau's foreman] to arrange light work." The personnel department decided, in accordance with union rules "and supervision," to place Thebeau at work on a fork lift truck which is similar to the truck he formerly operated. In operating such a truck the driver is not required to get on and off the machine as often as in the case of the regular truck operation. Normally in the operation of the fork lift truck an operator uses his right foot on the brake pedal. Upon assuming the new duties Thebau did not use his right foot to operate the brake pedal because it was "too sore"—he could not do it. Instead, he favored his right foot by crossing over and using his left foot to activate the brake pedal. Thebeau could not handle the truck, and so stated in a conversation with plaintiff. Plaintiff himself, observing Thebeau's operation of the truck, considered Thebeau unsafe. Nevertheless Thebeau continued to operate the truck in this manner on the working days between August 31 and September 8. On the latter date Thebeau, while pulling in to put his electric truck "on charge," saw that he was going to hit the ladder on which plaintiff was working, and got excited. He hit the brake with his left toe instead of using his right foot. It bent over and his foot slipped off, as a result of which the truck struck the ladder. He tried to but could not stop the truck by the use of his right foot because it hurt him "too bad."

Defendant denied that he knew what kind of work Thebeau had been doing prior to his injury or that he told Thebeau to go back to work on a truck or that he told Thebeau that operating a brake pedal would be good for his foot. For the purpose of this decision, however, we disregard defendant's testimony and assume the truth of Thebeau's testimony in this respect.

Considering the evidence in the light most favorable to him plaintiff failed to make a submissible case. There is a failure of proof in two vital respects.

██ Under plaintiff's theory of the case the burden was on plaintiff to prove that defendant did not exercise the knowledge, skill and learning of an industrial doctor in determining the fitness of Thebeau to return to work and that defendant knew or could have known that Thebeau was not physically fit to return to work on a truck requiring him to operate a footbrake pedal because of pain and weakness in his ankle. Defendant cannot be held liable for the consequences of all mistakes in diagnosing and determining whether an injured employee may safely return to work. The mere fact that he may have been wrong in his conclusion in this case is not sufficient to convict him of negligence. Brown v. Scullin Steel Co., 364 Mo. 225, 260 S.W.2d 513, 518 [3]. Whether Thebeau, with safety to himself and others, could undertake duties involving such physical exercise, considering the condition of his ankle and the extent of his recovery, was a matter of medical judgment. The standards by which defendant's determination is to be judged are the same by which a defendant in a medical malpractice case is to be judged, Brown v. Scullin Steel Co., supra, 260 S.W.2d, l. c. 518 [2], namely, by the requirement that he use and exercise that degree of care and skill used and exercised by the ordinarily skillful, careful and prudent physician acting under the same or similar circumstances. Williams v. Chamberlain, Mo.Sup., 316

S.W.2d 505, 510. As in the majority of cases, id., 316 S.W.2d, l. c. 511, so under the facts in this case, a submissible case may only be made by expert medical testimony, in order that the jury may know and not guess whether defendant's judgment did or did not conform to the required standards. There is a total absence of expert testimony that defendant did not exercise the required degree of care and skill, and that defendant's opinion that Thebeau could be released for truck driving, with safety to himself and others, considering the condition of his ankle and the extent of his recovery, was contrary to recognized medical theory and practice. As stated in the case of Brown v. Scullin Steel Company, the rule of Bailey v. St. Louis-San Francisco Ry. Co., Mo.App., 296 S.W. 477, 479 [2], that "the law will not hold a physician guilty of negligence as long as he uses his best judgment, even though his judgment may prove erroneous in a given case, unless it be shown that the course pursued was clearly against the course recognized as correct by the profession generally" is applicable where the alleged negligence is the giving of an opinion that an employee can engage in certain work. In the absence of evidence from which the jury could have found that defendant's opinion was contrary to recognized medical theory and practice, there was a failure of proof. Brown v. Scullin Steel Co., supra.

In the second place, plaintiff failed to sustain the burden of proving that defendant *caused* Thebeau to undertake the employment in question. It is elementary that "plaintiff's burden embraces not only proof of negligence but proof also that the negligent act or acts caused the injury." Williams v. Chamberlain, supra, 316 S.W.2d, l. c. 511 [4]. There is no evidence that defendant's opinion that Thebeau could go back to work on the truck and that exercising his foot by using the brake pedal would be beneficial was ever communicated to the company employees responsible for choosing a job for Thebeau on his return to work, or that defendant's act or advice caused or resulted in his assignment to the truck driving job. Appellant mistakenly argues that on reporting for work Thebeau reported to his foreman and the safety supervisor what defendant had recommended about truck driving, but the transcript shows the contrary: that Thebeau did *not* tell his superiors what defendant had said in this respect. Defendant, who was merely a company physician, was not in a position to control, and did not have control over, the placement of Thebeau in a particular job upon return to work. He did not in fact make the decision that sent Thebeau back to work on the truck. Under plaintiff's own evidence Thebeau's assignment to the truck driving job was made as the direct result of an independent decision and judgment made by the safety supervisor and foreman Heitman, based upon a discussion between those two and Thebeau and a memo signed by defendant releasing Thebeau for "light work" without extensive walking or standing. When Thebeau was questioned by the safety supervisor and foreman he told them he did not know whether he could drive a truck or not. He did not communicate to them the fact that in the opinion of the defendant he could assume the truck driving job and that defendant considered that the exercise in operating the brake pedal would be good for his ankle. It is obvious that Thebeau did not rely upon defendant's "superior knowledge" and suggestion, or "follow orders" of the defendant, as appellant suggests. While it is true that defendant released Thebeau for "light work," there was no evidence from which the jury could find that, and there was no submission to the jury of the question whether, a release for "light work" is the equivalent of or synonymous with a release for work of driving a fork lift truck eight hours a day. Causation between the medical opinion and the placement of Thebeau at work on the truck was not established. The mere fact that this industrial doctor made a determination in his mind that the employee was physically able to safely return to a truck driving job and that the judgment at which he arrived may

have been erroneous, is insufficient as a basis upon which to hold him liable for the consequences where there is a failure of proof of proximate causation between the expression of the medical opinion and the assignment of the employee to the job which proved to be beyond his capacity and unsafe. In the absence of proof that the defendant doctor *caused* the recuperating employee to undertake the unsafe employment, plaintiff did not make a submissible case.

The judgment was for the right party, and is affirmed.

COIL and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.